Armond J. EITMANN, Plaintiff-Appellant,

v.

NEW ORLEANS PUBLIC SERVICE, INC., Defendant-Appellee.

No. 82–3705.

United States Court of Appeals, Fifth Circuit.

April 23, 1984.

Rehearing and Rehearing En Banc Denied May 31, 1984.

---

Law Offices of Ferdinand Kleppner, Ferdinand J. Kleppner, Metairie, La., for plaintiff-appellant.

Chaffe, McCall, Phillips, Toler & Sarpy, G. Phillip Shuler, David L. McComb, New Orleans, La., for defendant-appellee.

Before RUBIN and RANDALL, Circuit Judges, and MITCHELL *, District Judge.

RANDALL, Circuit Judge:

The threshold issue posed by this appeal is whether federal jurisdiction was properly invoked in removing the action to federal court from the state court in which it was brought. Because we hold that the district court had original jurisdiction over the action, and because the appellant advances no arguments challenging the district court's summary judgment on a ground other than lack of subject matter jurisdiction, we affirm.

## I. Factual and Procedural Background.

The plaintiff, Armond Eitmann, was employed from 1969 to 1977 by the defendant, New Orleans Public Service, Inc. ("NOPSI"), as a lineman in NOPSI's Overhead Lines Division. Eitmann contends that prior to being hired, he was advised by the Division Manager that, due to the hazardous nature of linemen's work, a lineman who suffered work-related injuries would receive full compensation during any period of total or partial disability, or until retirement.

In February, 1976, Eitmann was injured on the job. NOPSI paid him full salary during his convalescence. He was reinjured later that year and was assigned to modified duty at full pay. In November, 1977, NOPSI discharged Eitmann, advising him that it had no suitable work available that he was capable of performing.

At all times during his employment with NOPSI, Eitmann was a member of the Cooperative Electric Distribution Division Employees' Association (the "Union"), which maintained a collective bargaining agreement with NOPSI. The agreement provided, *inter alia:*

SECTION 7. It is agreed that any employee has the right to leave the service of the Company individually at any time, and in like manner, the Company

---

* District Court Judge for the Eastern District of Louisiana, sitting by designation.

has the right, at its discretion, to dispense with the services of any employee, provided, however, that in the case of discharge for cause, the employee or this Association, representing said employee may, if it so elects, grieve the discharge and after the grievance procedure has been exhausted, may submit said dismissal to arbitration in accordance with the provisions of this Agreement.

SECTION 8. If an employee covered by this Agreement should have a grievance arising out of the interpretation or application of specific provisions of this Agreement, or claim unjust treatment or that the dismissal was unjust, relief may be sought through the following grievance procedure:

\* \* \* \* \* \*

[A four-step grievance procedure, culminating in binding arbitration, followed.]

After his discharge, Eitmann invoked the first two steps of the grievance process—presenting a written notice of his allegedly unjust dismissal to the General Manager, and meeting for discussion with a NOPSI Vice President—but abandoned the procedure when his grievance was denied at both junctures. He filed suit in state court seeking reinstatement,[1] alleging breach not of the collective bargaining agreement but of his individual employment contract with NOPSI, whereby the latter allegedly had promised to keep him on the payroll at full compensation in the event of a disabling work-related injury.

NOPSI petitioned for removal of the case to federal court pursuant to 28 U.S.C. § 1441(b) (1976), asserting that Eitmann's claim arose under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq. (1976). NOPSI alleged that Eitmann's action amounted to one for violation of a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting commerce, and thus stated a claim arising under section 301 of the LMRA, 29 U.S.C. § 185(a).[2] The district court granted the petition for removal and, upon NOPSI's motion for summary judgment, dismissed the action.[3]

Eitmann appeals the dismissal of his action. He argues that the district court lacked jurisdiction over the subject matter of the suit, asserting that his claim did not arise under the collective bargaining agreement, but rather was grounded upon breach of Eitmann's individual contract of employment with NOPSI. Thus, he contends that removal was improper and urges us to remand the action to the state court whence it came. NOPSI argues that Eitmann's state-law contract claim is preempted by the LMRA, and that therefore his action necessarily arises under federal law despite the absence of any mention of federal law in his complaint, and was properly removed.

## II. Federal Preemption.

Section 301 of the LMRA reflects a Congressional intent to promote industrial peace by ensuring uniform application of federal law to the enforcement of collective bargaining agreements. See Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Thus, federal jurisdiction is properly invoked if the complaint

---

1. Eitmann's original complaint sought lost future wages and retirement benefits. He later amended it to seek only reinstatement. See Record at 102–04.

2. Section 301 provides:

   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

3. NOPSI moved for summary judgment on a number of grounds, including Eitmann's failure to exhaust the grievance procedure provided by the collective bargaining agreement. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The district court did not specify the basis upon which it granted NOPSI's motion. Our affirmance is based on the failure to exhaust. See infra part IV.

alleges the violation of a collective bargaining agreement affecting interstate commerce. To the extent that state law would otherwise provide a remedy for the contractual breach, it is preempted. *See, e.g., Republic Steel Corp. v. Maddox*, 379 U.S. 650, 657, 85 S.Ct. 614, 618–19, 13 L.Ed.2d 580 (1965); *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers*, 376 F.2d 337, 339–40 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In a case involving the application of federal labor law, an employee asserting a violation of the collective bargaining agreement is bound by the terms of that agreement as to the method of enforcing his or her claim and, generally, is required to exhaust those remedies. *See Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967); *Republic Steel v. Maddox*, 379 U.S. at 652–53, 85 S.Ct. at 616–17; *Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518, 519 (5th Cir.1978).[1]

In this case, however, we are presented with a claim that, on its face, does not invoke the collective bargaining agreement. Eitmann asserts, rather, that the contract upon which his action is based is independent of the Union's agreement with NOPSI, and that it pertains to matters other than those governed by the collective bargaining agreement. NOPSI contends that Eitmann's claim is necessarily subsumed into the collective bargaining agreement.

In *J.I. Case v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), the Court established that, while individual contracts between employer and employee are not precluded by the existence of a collective bargaining agreement, to the extent that an individual contract and a collective bar-

gaining agreement are inconsistent, the latter must prevail. *Id.* at 337–39, 64 S.Ct. at 580–81. The Court held inconsistent with a collective bargaining agreement any individual contract by which the employer would "incidentally exact or obtain any diminution of his own obligation or any increase of those of employees in the matters covered by the collective agreement." *Id.* 321 U.S. at 339, 64 S.Ct. at 581. The Court expressly declined to hold that an individual contract more advantageous than the collective bargaining agreement would be unenforceable, but noted that the "practice and philosophy of collective bargaining looks with suspicion on such individual advantages." *Id.* at 338, 64 S.Ct. at 580. *See also NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967) ("[National labor] policy ... extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interest of all employees .... Thus only the union may contract the employee's terms and conditions of employment ....").

Eitmann contends that his alleged individual contract is not inconsistent with the terms of the collective bargaining agreement and thus, under *J.I. Case*, he is not precluded from a state claim based on its breach. We are not persuaded, however, that the two agreements can be construed so independently of each other. *J.I. Case* specifically noted that individual contracts may not "be used to ... limit or condition the terms of the collective agreement.... Individual contracts cannot subtract from collective ones ...." 321 U.S. at 337–39, 64 S.Ct. at 580–81. The oral agreement that Eitmann contends he entered into with NOPSI provided, essentially, for lifetime employment, regardless of his ability to perform any services for the

---

**4.** A grievant may file suit without fulfilling the exhaustion requirement if (1) the union wrongfully refuses to process the grievance; (2) the employer's conduct amounts to a repudiation of the contract's remedial procedures; or (3) exhaustion would be futile because of the lack of

an impartial decision-maker. *See Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967); *Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518, 519 (5th Cir.1978). None of these exceptions is applicable here.

employer; in other words, unlike all of the other employees covered by the collective bargaining agreement, Eitmann could not be discharged because of his physical inability to perform any services for NOPSI.[5] We think that this alleged agreement clearly seeks to "limit or condition" the terms of the collective bargaining agreement, which established the terms and conditions of employment, including discharge. *See* Eitmann Dep.Exh. 15.[6] Section 8 of the agreement provides that a discharged employee claiming unjust dismissal shall grieve his or her claim pursuant to the contractual grievance procedure. Yet Eitmann contends that his individual contract should be interpreted to supersede this provision. We do not agree.

It has been long settled that the explicit terms of a collective bargaining agreement do not necessarily establish its boundaries. The Supreme Court, in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), established that:

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practice of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Id.* at 581–82, 80 S.Ct. at 1352; *accord Smith v. Kerrville Bus Co., Inc.*, 709 F.2d 914, 917 (5th Cir.1983); *Sanderson v. Ford Motor Co.*, 483 F.2d 102, 112 (5th Cir.1973). In his complaint and in his deposition, Eitmann asserted that NOPSI advised him

that all linemen were afforded the lifetime-employment treatment he seeks to obtain. To the extent that this assertion invokes the "industrial common law" of NOPSI's employment practices, therefore, *Warrior & Gulf* clearly establishes that such practices are part and parcel of the collective bargaining agreement and subject to its terms, including the grievance procedure.

Moreover, we note that section 13 of the collective bargaining agreement provided that "any disagreement or dispute" relating to the "meaning, interpretation or intention of this agreement" shall be subject to arbitration. *Warrior & Gulf* makes it clear that a dispute with regard to company practices, policies, or customs that are not explicitly covered by the collective bargaining agreement is properly within the scope of the contractual grievance procedure. *See also Oil, Chemical & Atomic Workers Union v. Amoco Chemical Corp.*, 589 F.2d 162, 164 (5th Cir.1979).

Our analysis is supported by the Supreme Court's recent interpretation of *J.I. Case*, in *Belknap, Inc. v. Hale*, —— U.S. ——, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983). In *Belknap*, strike replacements brought suit against an employer in state court, alleging that their displacement by reinstated strikers constituted breach of a contract of permanent employment. The plaintiffs sought damages. The Supreme Court held that the plaintiffs' claims were not preempted by the LMRA because they were "of only peripheral concern" to the federal labor law. 103 S.Ct. at 3182–84.[7]

---

**5.** At oral argument, Eitmann also took the position that, because section 7 of the collective bargaining agreement permitted an employee to grieve a dismissal that was "for cause" and his dismissal was not for cause, he was precluded from proceeding with a grievance under that section. This argument is specious. Essentially, Eitmann seeks a judicial determination whether his discharge was just. Clearly, however, the point of providing a grievance procedure for discharges "for cause" was to supply the grievant a process by which he may challenge the employer's characterization of its action. To find a conclusionary assertion that a discharge was not for cause a sufficient basis on which a grievant may avoid the grievance proce-

dure would be to circumvent entirely the purpose and policy of the procedure's existence.

**6.** *See also Republic Steel Corp. v. Maddox*, 379 U.S. at 656, 85 S.Ct. at 618:

> Severance pay and other contract terms governing discharge are of obvious concern to all employees, and a potential cause of dispute so long as any employee maintains a continuing employment relationship.

**7.** The "peripheral concern" doctrine is based on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), where the Court held that the LMRA did not displace state regulation of all actions conceivably relating to a contract within the coverage of section 301:

*Belknap* is consistent with other Supreme Court cases addressing claims only tangentially related to federal labor law. In *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Court held that an action for false and malicious statements made in the course of a labor dispute stated a claim under state law. Similarly, in *Farmers v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), a state action for intentional infliction of emotional distress, even though the conduct arguably constituted an unfair labor practice, was held not to be preempted by the LMRA. And in *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, —— U.S. ——, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Court noted in dictum that, *e.g.*, a state battery suit arising out of a violent strike would not be preempted. 103 S.Ct. at 2854 n. 28. *See also Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (state trespass action arising from picketing not subject to preemption).

The *Belknap* holding was premised on the notion that permitting the state action to proceed would not "frustrate any policy of the federal labor laws." 103 S.Ct. at 3184. The *Belknap* plaintiffs, for example, did not seek a remedy that, had it been awarded by a state court, would have encroached on the function or authority of the National Labor Relations Board, because the Board could not have granted any relief to the plaintiffs. Rather, the Court emphasized that the mere fact that the plaintiff's suit "related to" an unfair labor practice strike was insufficient to bring the suit within the jurisdiction of the Board. While acknowledging that the issue whether offering permanent jobs to replacements during such a strike constituted an unfair labor practice was a matter for the Board, the Court held nonetheless:

> When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting. However, due regard for the presuppositions of our embracing federal system ... has required us not

The focus of these determinations, however, would be on whether the rights of strikers were being infringed. Neither controversy would have anything in common with the question whether Belknap made misrepresentations to replacements that were actionable under state law. The Board would be concerned with the impact on strikers not with whether the employer deceived replacements.

103 S.Ct. at 3183. Thus, the interests of the federal labor laws on the one hand, and that of the state in providing a remedy for misrepresentation and breach of contract on the other, were held to be "discrete" concerns. *Id.* at 3184.

*Belknap* provides some guidance but is not dispositive of the case before us. The Court was not there presented with a situation in which employees who were covered by a collective bargaining agreement sought to bring an action on an alleged separate contract. Rather, the *Belknap* plaintiffs sought relief that the LMRA did not afford them. *See* 103 S.Ct. at 3183. We think that *J.I. Case* would have mandated a different result had this circumstance been different in *Belknap*. Where, as here, an employee who is covered by the collective bargaining agreement seeks to redress a grievance subject to its terms, and seeks a remedy awardable by the arbitrator, we think it is clear that his avenue lies in the procedure provided by the collective bargaining agreement. Any state law cause of action is necessarily preempted by section 301. To hold otherwise in such a case would frustrate the policy of the federal labor laws. *See Belknap*.

## III. Subject Matter Jurisdiction.

Having determined that Eitmann's state law claim is preempted by federal labor law, we turn to the issue whether the dis-

> to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act.
>
> 359 U.S. at 243, 79 S.Ct. at 778–79 (footnote omitted).

trict court would have had original jurisdiction over the action had it been brought in federal court. *See Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972).[8] The federal courts have original jurisdiction over a claim that "arises under" a federal law regulating commerce. *See* 28 U.S.C. § 1337 (1976 & Supp. V 1981).[9] It is this "arising under" component of federal jurisdiction that concerns us in this case. Eitmann contends that his claim arises not under federal but state law. NOPSI argues that Eitmann utilized "artful pleading" to cloak the true nature of his claim.

■ The "arising under" jurisdiction of the federal courts is a subject on which few courts or commentators have been silent. *See, e.g., Powers v. South Central United Food & Commercial Workers Unions*, 719 F.2d 760, 763 n. 1 (5th Cir.1983) (collecting cases and commentary). This prolixity, however, has not resulted in standards upon which there is universal agreement. Nonetheless, a fundamental premise underlying "arising under" jurisdiction is embodied in the "well-pleaded complaint" rule. That doctrine provides:

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914); *see also Franchise Tax Board, supra; Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Pursuant to the well-pleaded complaint rule, therefore, a defendant "may not remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under' federal law." *Franchise Tax Board*, 103 S.Ct. at 2847 (emphasis in original).

■ An independent corollary of the well-pleaded complaint rule, however, establishes that a plaintiff may not defeat removal by fraudulent means or by "artfully" omitting to plead essential federal issues in the complaint. *See Franchise Tax Board*, 103 S.Ct. at 2853; *Avco Corp. v. Aero Lodge No. 735, supra.* In such a case, courts will not permit rigid application of the well-pleaded complaint doctrine to aid a plaintiff's attempt to circumvent federal jurisdiction. Thus, where the artful pleading analysis is appropriate, removal is proper despite the absence of a federal issue on the face of the complaint. *See, e.g., Avco, supra.*

■ In their application of the well-pleaded complaint rule, many courts have held that federal preemption of state law constitutes a defense to the plaintiff's action, and does not confer original jurisdiction in the federal courts. This position is exemplified by the Third Circuit's approach in *Trent Realty Associates v. First Federal Savings and Loan Ass'n of Philadelphia*, 657 F.2d 29 (3d Cir.1981). There, the defendant sought removal of a state court action, seeking a declaratory judgment that a mortgage penalty was unenforceable. The defendant asserted that its right to assess the penalty was protected by the Home Owners' Loan Act of 1933; thus, the plaintiff's complaint necessarily interposed a substantial federal issue. The court disagreed, holding that although the Act may preempt state law to the contrary, the federal issue nonetheless was one asserted by way of a defense, thus contravening *Mottley* and *Gully*, and would not support re-

---

**8.** *Grubbs* establishes that this is the proper inquiry where, as here, an objection to removal is raised for the first time on appeal. Eitmann did not object to removal in the district court, nor did he move to have the case remanded to state court.

**9.** The "arising under" requirement of section 1337 has been interpreted to be the same as that found in 28 U.S.C. § 1331 (1976 & Supp. V 1981), the grant of general federal question jurisdiction. *See, e.g., Yancoskie v. Delaware River Port Authority*, 528 F.2d 722 (3d Cir.1975).

moval jurisdiction. 657 F.2d at 34.[10] *Accord First Nat'l Bank of Aberdeen v. Aberdeen Nat'l Bank,* 627 F.2d 843 (8th Cir. 1980) (en banc) (National Bank Act); *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654 (9th Cir. 1972) (antitrust); *Bailey v. Logan Square Typographers, Inc.,* 441 F.2d 47 (7th Cir. 1971). To the same effect, we held recently that a defense based on ERISA's asserted preemptive effect did not provide removal jurisdiction. *See Powers, supra.*

This line of cases, however, presents a problem different from the one before us today. Here, the preemptive force asserted to render original federal jurisdiction appropriate is the federal labor law. We think that this distinction is determinative.

In *Avco Corp. v. Aero Lodge No. 735, supra,* the Supreme Court considered whether a state law claim that was preempted by section 301 could properly be removed to federal court where the plaintiff had not invoked section 301 on the face of the complaint. In deciding that section 301's preemptive effect provided "arising under" jurisdiction under section 1337, the Court held that it was clear that the collective bargaining agreement claim at issue was "one arising under the 'laws of the United States' within the meaning of the removal statute." 390 U.S. at 560, 88 S.Ct. at 1237. Moreover, the *Franchise Tax Board* Court, in distinguishing the case before it—which involved the propriety of removing an ERISA-preempted state claim—from *Avco,* noted:

> The necessary ground of decision [in *Avco* ] was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.*

103 S.Ct. at 2853–54 (emphasis added). Thus, courts that have addressed the effect of preemption by section 301 have held that the federal courts have original subject matter jurisdiction over the action. *See, e.g., Fristoe v. Reynolds Metal Co.,* 615 F.2d 1209 (9th Cir.1980); *Johnson v. England,* 356 F.2d 44 (9th Cir.), *cert. denied,* 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966); *Portley v. Kaiser Hospitals,* 15 L.R.R.M. 2629 (BNA) (N.D.Cal.1983); *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union,* 511 F.Supp. 1180 (S.D.N.Y.1981); *Talbot v. National Super Markets of Louisiana,* 372 F.Supp. 1050 (E.D.La.1974); *Klepacky v. Kraftco Corp.,* 80 L.R.R.M. 3144 (BNA) (D.Conn.1972). *See generally* 14 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3722 (1976). *Cf. Medlin v. Boeing Vertol Co.,* 620 F.2d 957, 962 (3d Cir.1980) (where prior arbitration determined that collective bargaining agreement did not cover plaintiff's claim, state contract action not precluded because alleged rights did not arise under collective bargaining agreement).

We think that *Avco* and its progeny are persuasive with regard to the issue before us. Therefore, we hold that, where a state cause of action is preempted by section 301, the federal courts have original subject matter jurisdiction over the action despite the absence of a federal claim on the face of the complaint. In such a case, which raises the spectre of "artful pleading," the court must necessarily be guided by the substance rather than the form of the complaint. *In re Carter,* 618 F.2d 1093 (5th Cir.1980), *cert. denied sub nom. Sheet Metal Workers v. Carter,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *Villarreal v. Brown Express, Inc.,* 529 F.2d 1219

**10.** The court explicitly noted, however, that *Trent Realty* did not present a case of "artful pleading." 657 F.2d at 35 n. 2.

(5th Cir.1976); *Romick v. Bekins Van & Storage Co.*, 197 F.2d 369 (5th Cir.1952).[11] We think that, in a case such as this, to limit our inquiry to the face of the complaint would unduly hamper the policy underlying section 301. Thus, because NOPSI's petition for removal clearly demonstrated that Eitmann's cause of action "arose under" section 301, the district court had original jurisdiction over the action.

*IV. Summary Judgment.*

Eitmann's contention that summary judgment was improper is premised on his assertion that the district court lacked subject matter jurisdiction over the action. The foregoing discussion demonstrates our disagreement with this premise. We find, therefore, that the district court's summary judgment in favor of NOPSI was correct.

AFFIRMED.

---

**11.** We note that under *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), Eitmann's aborted grievance attempt alone could arguably form the basis for a finding of artful pleading. In *Moitie,* the plaintiff originally brought suit in federal court for federal antitrust violations. When the case was dismissed for failure to state a claim, the plaintiff refiled in state court, alleging antitrust violations based on the same transactions and theories set forth in the original complaint, but couched solely in terms of state law. The Supreme Court sanctioned removal, holding that the plaintiff's "artful pleading" was merely a device to avoid explicitly raising "essentially federal law claims." 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2. Here, Eitmann does not contend that his original in-

vocation of the grievance procedure was based on any transactions or theories different from those he alleged in this suit. In his grievance letter, Eitmann sought reinstatement and alleged that his dismissal was unjust under Section 8 of the collective bargaining agreement:

> The specific provision of the agreement, the company policy and work rules which are alleged to have been violated involved the continuing past practice of this company which existed prior to my employment and continued throughout my employment by which the workers and employees who sustained injuries on the job are continued in the employ of the company at full pay until complete recovery or retirement, whichever occurs first.

Eitmann Dep.Exh. 7.