**Roger ONEY, Plaintiff,**

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant.**

No. 2:95–CV–015.

United States District Court,
E.D. Texas,
Marshall Division.

Nov. 24, 1997.

John Dale Sloan, Jr., Sloan & Price, Longview, TX, for Plaintiff.

William Stephen Boyd, Worsham Forsythe & Wooldridge, Dallas, TX, for Defendant.

## *OPINION MEMORANDUM*

COBB, District Judge.

### I. BACKGROUND

Plaintiff Roger Oney sued against the defendant, Kansas City Southern Railway Company (KCS) alleging that KCS denied him a promotion because of his membership in the Brotherhood of Maintenance of Way Employees Union (Union), and by exercising his rights under the Collective Bargaining Agreement (CBA) between the union and the KCS. Under the CBA's provisions, an em-

ployee in a position covered by the CBA, can file "time slips" seeking overtime pay for work management improperly gave to someone other than the complaining employee. Oney contends that, in exchange for curtailing his repetitive submission of "time slips," KCS promised to promote him to the management position of Assistant Road Master.

KCS twice moved for summary judgment and Judge Folsom issued a Memorandum Opinion granting partial summary judgment in favor of KCS on Oney's claims of breach of the covenant of good faith and fair dealing, violation of the Labor Management Relations Act (LMRA), violation of the Fair Labor Standards Act (FLSA) and violation of Railway Labor Act (RLA). Judge Folsom's opinion preserved Oney's claims of breach of contract, fraud, and a violation of the Texas Labor Code. The case was then transferred to this court. With settlement negotiations and mediation having failed, this court, in preparation for trial, revisits Oney's remaining claims.

## II. ONEY'S CLAIMS

Oney, a union member, claims that KCS' failure to promote him to the entry level management position of Assistant Road Master violates both the express terms and the spirit of the CBA between the Union and KCS. More specifically, he contends that he was discriminated against in violation of Rule 10 of the CBA and the "Equal Opportunity and Non–Discrimination" clause which was appended to the CBA in 1985. KCS responds that all Oney's remaining claims are preempted by the RLA which requires "minor disputes" to be adjudicated through an arbitrative process. Neither party's position is entirely correct.

### A. *Breach of Written Contract—Collective Bargaining Agreement (CBA)*

Judge Folsom's order of partial summary judgement dismissed Oney's claims for violations of the LMRA, FLSA, and RLA. The CBA between Oney's union and the KCS is the only claimed written contract in this case. Oney claims that Judge's Folsom's denial of summary judgement for "breach of contract,"

somehow revives his claims under written contract or the CBA. He is incorrect.

It is a well settled a corporation has broad discretion to chose its directors and managers. Furthermore, courts have been careful not to extend the terms of a CBA to those employees in positions not expressly covered by the CBA or to positions not covered by the CBA. *See Kidd v. Southwest Airlines, Co.* 891 F.2d 540, 545 (5th Cir.1990); *Cooper v. General Motors Corp.,* 651 F.2d 249, 250 (5th Cir.1981) (*stating* "Supervisors are by the very nature of their positions are not members of the collective bargaining unit and cannot be represented by a union that represents rank and file employees." National Labor Relations Act, 29 U.S.C. § 153(3).).

Oney, a longtime employee of the KCS currently holds the position of track foreman which is the highest level position expressly covered under the terms of the CBA. There is no dispute that Oney's promotional progression from entry level to track foreman was in conformance with the terms and provisions of the CBA. Oney's dispute with the KCS concerns KCS' refusal to promote him to the position of Assistant Road Master. This position is a management position which is not covered by the express terms of the CBA. *See* Rule 1, "Agreement Between Kansas City Southern Railway Co., et al. and Brotherhood of Maintenance of Way Employees," p. 3, Rev.1979.

Oney's breach of written contract claim rests on his interpretation of two particular provisions of the CBA. He points to both Rule 10 and the "Equal Opportunity and Non–Discrimination" clause. In pertinent part, Rule 10 states:

Promotions from and to positions covered by this agreement shall be based on ability, merit, and seniority. Ability and merit being satisfactory, in the judgment of the Management, seniority shall prevail.... Assistant track foremen will be considered as next in line for promotion to fill track foremen positions.

"Agreement Between Kansas City Southern Railway Co., et al. and Brotherhood of Maintenance of Way Employees," p. 10, Rev.1979.

The "Equal Opportunity and Non–Discrimination" clause states:

There shall be no discrimination against an employee on account of his being a member of a railroad la>or organization or on account of his serving on employes [sic] committee.

J.L. Deveney to L.W. Borden, "Equal Opportunity and Non–Discrimination," July 23, 1985.

Oney argues that, even though the management position of Assistant Road Master is not among the positions expressly listed in Rule 1 of the CBA, the language of Rule 10 extends the CBA's coverage to that of Assistant Road Master.[1]

Rule 10 primarily concerns the criteria and relationship between such criteria which management must consider when making promotions from and to positions covered by the CBA. It specifically deals with the issue of how seniority must be factored into promotional decisions.[2] Importantly for this case, Rule 10 expressly preserves management's traditional role in awarding employees promotions to supervisory positions listed in Rule 1 of the CBA. Oney would have the Court interpret the language of Rule 10 as covering not only those supervisory positions listed in Rule 1 but, also the management position of Assistant Road Master and the entire universe of KCS' employment positions.[3]

This Court finds it significant that in Rule 10 the KCS expressly reserved the traditional management role of evaluating ability and merit in awarding promotions to all supervi-

sory expressly covered by the CBA. The only concession to labor, was that seniority be considered as a determining factor **after** management has determined that the employee has the ability and merits the promotion. In light of such a reservation by management, this Court does not find it credible that the parties to the CBA would dilute management's traditional and exclusive role of determining the persons it chooses to promote to management positions, **not** covered by the CBA, by agreeing to a CBA provision which would infringe upon and severely limit management's discretion to choose its managers and executives.

This Court finds no authority or rationale to extend Rule 10's coverage to management positions not expressly covered by the CBA. It, therefore, can not agree with Oney's interpretation and must hold Rule 10 only extends to and covers "any and all" positions expressly listed within the CBA and "to and from" positions expressly listed in other collective bargaining agreements between the KCS and other organized labor bargaining units (promotions across bargaining units). Rule 10 does **NOT** apply to management positions, and employees who are outside the express provisions of this CBA. Accordingly, because the position of Assistant Road Master is inexorably excluded from the express terms of the CBA it is excluded from the reach of Rule 10.

■ Oney also contends that the "Equal Opportunity and Non–Discrimination" clause of the CBA serves as a basis for his breach

---

1. Rule 1 lists those positions expressly covered by the CBA. The list includes Oney's current position of "track foreman" but does not include the position of "Assistant Road Master."

2. The provisions states that when ability and merit are satisfactory **in the judgment of management**, seniority prevails.

3. Oney's interpretation would in effect extend Rule 10's coverage to all management positions including senior management and executive positions. It is axiomatic that KCS has only two types of employees and positions: 1) those expressly covered by this or another CBA; and 2) those not expressly covered by this CBA. Because there are only two types of positions this interpretation effectively extends Rule 10's cover-

age to all KCS employees and to all KCS' management and hourly positions. An interpretation in which Rule 10 is read to cover management positions and employees leads to an improbable scenario in which management could "promote" a salaried manager to a hourly supervisor position or a gang leader position and that such a "promotion" would be subject to the seniority provisions of Rule 10. First, this Court knows of no credible scenario where a manager would be "promoted" to a low level labor position and second, in the event management had a need to "bump-back" a manager to a supervisory position covered by the CBA, this Court finds it difficult to believe that the manager who may have no seniority to be credited to the covered position could be denied the position because of Rule 10's provisions.

of written contract claim. Though on its face, this clause only prohibits discrimination by the KCS on account of one's union **membership,** Oney contends that membership is synonymous with the exercise of rights granted under the CBA. Accordingly, he reads this clause as barring the KCS from considering any exercise of any right afforded him under the CBA, including his "time slip" practices, when determining whether or not he should be **promoted** to a management position.

KCS obviously disagrees. It argues that the "Equal Opportunity and Non–Discrimination" clause of the CBA does not apply to this case because: the position Oney sought is not covered by the terms of the CBA; union membership and the exercise of rights thereunder are not necessarily synonymous; many of Oney's "time slip" filings were frivolous; and Oney's excessive filing of time slips demonstrates he lacks the necessary judgment and discretion to be a KCS manager and therefore, it should not be forced to promote someone to a management position who it deems unsuitable. Accordingly, KCS' denies that it discriminated against Oney on account of his union membership, but rather it simply exercised management's traditional right to evaluate its employees and to choose its managers.

The question raised is whether the "Equal Opportunity and Non–Discrimination" clause as extends the terms of the CBA to a class of persons and positions not expressly covered by the CBA. More specifically, the question is whether KCS, when determining persons to be promoted to a management position, is barred from considering how a union member exercises his rights under the CBA. Like Rule 10, this Court does not interpret the "Equal Opportunity and Non–Discrimination" clause as impinging on management's traditional right to choose its managers. Moreover, this Court finds no basis for an interpretation of this clause which would require management to ignore significant data relating to the behaviors and loyalties of those individuals seeking management positions. Therefore, the Court holds that "Equal Opportunity and Non–Discrimination" clause does not bar the KCS consider-ing how Oney exercised his union rights in determining whether or not he should be promoted to a management position.

■ Even though this Court does finds Oney's tortured interpretations of Rule 10 and the "Equal Opportunity and Non–Discrimination" clause of the CBA groundless, it need not even examine his interpretations. The very fact that Oney grounds his breach of written contract claim on the CBA itself, and has raised as an issue the interpretation of a CBA provision, relegates this claim to that of a "minor dispute" and thus, it must be subjected to the mandatory administrative provisions of the Railway Labor Act (RLA). *See* 45 U.S.C. § 151 *et seq.*

The RLA contains mandatory administrative provisions, including binding arbitration, to handle disputes arising from "grievances" or out of the interpretation of a CBA provision. *Id.; Gunther v. San Diego & A.E.R. Co.,* 382 U.S. 257, 260–61, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); *Pennsylvania Railroad Co. v. Day,* 360 U.S. 548, 550–552, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); *Hirras v. National R.R. Passenger Corp.,* 44 F.3d 278, 280–281 (5th Cir.1995). A minor dispute has been defined as one that requires interpretation of the CBA. *Gunther,* 382 U.S. at 260–61, 86 S.Ct. 368. Because Oney's claim is grounded on the CBA, and the interpretations of its provisions, it necessarily falls within the accepted realm of a minor dispute and is therefore, subject to the RLA's exclusive and binding administrative procedures.

A party asserting a claim under a CBA which falls into the "minor dispute" category must prosecute his claim under the exclusive and binding administrative provisions of the Railway Labor Act. 45 U.S.C. § 153 et seq.; *Consolidated Rail Corp. v. Railway Labor Executives' 'Assc.,* 491 U.S. 299, 303–04, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Only after a party has exhausted his administrative remedies, may it seek judicial review. Moreover, judicial review is limited to three specific grounds: 1) failure of the Adjustment Board to comply with the requirements of the RLA; 2) failure of the Adjustment Board to conform or limit itself to matters within its jurisdiction; and 3) fraud or cor-

ruption. *Union Pacific v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

Oney's pleadings indicate that he took only the first step in the administrative process before filing this suit. In accord with the provisions of the CBA, he filed a grievance concerning his being passed over for promotion and that grievance was denied. There is no evidence that Oney appealed the denial of his grievance to the Adjustment Board or that he pursued the remainder of the RLA's exclusive remedies up to and, including binding arbitration. If Oney did exhaust his administrative remedies, this Court's review would be limited to the *Sheehan* factors. It may not retry the merits of the dispute, or ,substitute its own judgment for that of the panel, Adjustment Board, or arbitrator. 45 U.S.C. § 152 et seq. If Oney failed to exhaust his exclusive administrative remedies, this Court may not even review the administrative outcome for compliance with the *Sheehan* factors.

Regardless of the status of Oney's pursuit of his administrative remedies, under the provisions of 45 U.S.C. § 153 he may not maintain a claim for a breach of the written contract (CBA) in this Court.

Accordingly, this Court holds that Oney's breach of contract claim which is grounded on the written CBA cannot stand and must be dismissed.

### B. *Violation of Texas Labor Code*

■ Oney claims that the KCS' denial of his promotion to a management position is in violation of the Texas Labor Code (Labor Code). Tex. Labor Code § 101.052 et seq. (West 1996). These sections, known as the "open shop" provision of the of the Texas Labor Code protect the rights of employees and prospective employees to freely chose to join or not join a labor union and they bar an employer from refusing to hire a person based on his membership or non-membership in a labor union. *Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115, 117 (1957). Oney contends that KCS' denial of his promotion to a management position in effect

denies him employment and as a consequence violates § 101.052 of the Texas Labor Code. His claim hinges on this Court's acceptance of his interpretation of the term promotion as being interchangeable with the term employment.

This court declines to accept Oney's interpretation. Contrary to Oney's interpretation of what constitutes employment, the plain language of Tex. Labor Code § 101.052 states that one shall not be denied **employment** because of union membership or lack thereof. It is undisputed that Oney remains employed by the KCS in an supervisory position as a track foreman. He draws pay and benefits from the KCS in exchange for his labor. Oney provides no authority for the proposition that the denial of a promotion to a management position is tantamount to the denial of employment under the "open shop" provisions and this Court can find no such authority for such a proposition.

This Court was also unable to find any other provision in the Texas Labor Code or the case law interpreting it which expressly or impliedly grants Oney a cause of action under the Texas Labor Code for not promoting him to a management position.

Absent a clear mandate from the Texas legislature or clear judicial precedent, this Court is without the power to extend the Texas Labor Code's the "open shop" provisions to management promotions. Even if this Court had such power, it would as a matter of policy, refrain from extending the provisions of the "open shop" provisions to cover management promotions. This Court doubts the wisdom of such an extension which would in effect: 1) categorize those KCS' employees working in positions covered by the CBA as employees of some entity other than KCS (perhaps the Union); 2) incorporate the anti-discrimination provisions of Texas Labor Code, § 21.051 et seq. into the organized labor provisions of the Texas Labor Code, §§ 101.001 et seq. thereby creating a new protected class [4]; and 3) create a new right of action for an employee to sue management over promotional practices thus, interfering with existing collective bargaining

---

4. The protected classes set forth in Section 21.051 of the Texas Labor Code are race, color, disability, religion, sex, national origin, and age. Tex. Labor Code § 21.052 et seq. (West 1996).

agreements or a corporation's traditional right to chose its managers.

Therefore, this Court holds that as a matter of law, and as a matter of fact, Oney was not denied employment on account of his membership in the union and therefore, he does not state a claim under the "Open Shop Provision" or any other provision of the Texas Labor Code. Accordingly, his claim for a violation of the Texas Labor Code must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) and 56(b).

### C. Breach of Oral Contract and Fraud

 Oney claims a breach of Oral contract and fraud. The genesis of this claim is that the KCS allegedly promised Oney that in exchange for Oney's exercise of restraint in the filing "time slips," he would be promoted to a management position. Oney further claims that KCS had no intention of fulfilling its promise thereby committing fraud in the inducement.

KCS counters that this also is an issue that falls under an interpretation of the CBA and therefore, this Court is preempted from hearing the matter. In support KCS cites *J.I. Case v. National Labor Relations Board,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944); *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359 (5th Cir.) cert. denied, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); and *Thomas v. LTV Corp.,* 39 F.3d 611 (5th Cir.1994) as authority.

These cases are distinguishable. In each of these cases, the plaintiff, while at all times being employed in a position covered by a CBA, attempted to enforce an implied or express individual employment contract containing terms and provisions which were in conflict with the terms and provisions of the CBA. The courts held that the individual employment contracts between management and the employee were unenforceable to the extent that the terms and provisions of an individual's employment contract conflicted with the terms and provisions of the CBA, and where enforcement of the individual's contract detrimentally affected the rights of other employees covered by the CBA. The obvious rationale central to these holdings was that denying the enforcement of an individual employment contract whose terms conflicted with the CBA would prevent the frustration of federal labor policy and the collective bargaining process.

Instead, Oney's state law claims of breach of oral contract and fraud fit neatly into a line cases starting with *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); *Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798(1983); and *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).[5] This line of cases held that federal labor law may not preempt state law claims that were only of peripheral concern to the federal labor law. *See Caterpillar,* 482 U.S. at 395, 107 S.Ct. 2425 (*quoting* the Supreme Court in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct or establish rights and obligations independent of a labor contract."); *Terminal Railroad Assn. of St. Louis v. Trainmen,* 318 U.S. 1, 6–7, 63 S.Ct. 420, 87 L.Ed. 571 (1943) (holding that the RLA does not pre-empt the field of regulating working conditions.); *accord Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 323–24, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (holding that the plaintiff's state-law claim was not pre-empted because the RLA was a broad pre-emption of state law claims, but rather because the plaintiff's claim was firmly rooted in a breach of the CBA itself.). Following this line of cases, the Supreme Court held in *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 260–62, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), that state law claims not relying on an interpretation of the CBA are not preempted by the RLA.

---

5. KCS attempts to distinguish the line of cases by claiming that the temporal relationship between performance on the part of parties is significant. KCS asserts that this line cases would apply only if the agreement had been Oney's resignation from the union in exchange for an immediate promotion to Assistant Road Master. This argument is entirely unpersuasive and fundamentally ignores the factual settings of these cases and misapprehends the principles underlying the holdings in this line of cases.

In this case, Oney has asserted a state law claims for breach of oral contract and fraud. The gist of his claim is that he contracted with KCS management for a management for a promotion to the position of Assistant Road Manager in exchange for curtailing his filing of "time slips," a right granted to him under the CBA. Because the oral contract alleged by Oney involves only the temporary curtailment of his exercise of a personal right granted by the CBA in exchange for a promotion to a position not covered by the CBA and requires no interpretation of a CBA provision, this Court finds that the alleged deal is not firmly rooted in a breach of the CBA itself, but rather it is only peripherally related to the CBA.

The Supreme Court in *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), found that where the resolution of a state law claim turned on the interpretation of the CBA, the claim is preempted but, where there are purely factual questions about an employee's or employer's conduct and motives and no interpretation of the CBA is involved, no preemption exists. In this case, no one needs to interpret the CBA provision regarding the filing of time slips to know that Oney had the right to file them. KCS points to no specific provision in the CBA which conflicts with Oney's breach of oral contract and fraud claims or which requires interpretation. KCS does not demonstrate how Oney's temporary curtailment of his filing of time slips affects anyone but Oney, and it points to no other KCS employee, covered by the CBA, whose rights under the CBA are in any way affected by Oney's claims of oral contract and fraud. Coupled with the fact that this Court, for reasons stated above, previously found that the Assistant Road Master position is not covered by CBA, it is clear that Oney's state law claims of breach of oral contract and fraud only touch the CBA peripherally, if at all. As in *Lingle*, there are only factual issues to be addressed in this matter. At issue is: whether Oney and KCS entered into an oral contract; if they did, what motivated them to do so;[6]

and if there was an agreement, whether the KCS ever intended to perform.[7] The interpretation of a CBA provision is not at issue.

Finally, this Court notes that its finding that the state law claims survive the RLA's preemption is also consistent with the underlying rational from *J.I. Case.* The rights of no other employee covered by the CBA would in any way be affected by the alleged oral contract, the practice of entering into such individual agreements for management positions not covered by the CBA does nothing to undermine the CBA, and the practice in no way undermines the CBA or frustrates federal labor policy.

Accordingly, for reasons stated above, this Court holds that Oney's state law claims of oral contract and fraud are not preempted by the RLA.

### III. SUMMARY

Oney's claim that KCS breached the CBA (written contract) must be dismissed. Provided that the statute of limitations has not run on the administrative process, Oney is free appeal the denial of his grievance through the administrative procedure established by the RLA. Additionally, Oney fails to state a claim under the Texas Labor Code Open shop provisions and therefore this claim must be dismissed. Finally, Oney does state a claim for breach of oral contract and fraud as a result of KCS' failure to promote him to a management position. These claims are not preempted by the RLA and will not be dismissed under Fed.R.Civ.P. 56(a). An appropriate order will be entered and trial will proceed on Oney's claims of breach of oral contract and fraud.

---

**6.** These factors go to the oral contract formation and breach claim.

**7.** This factor goes to the fraud claim.