**Merwin U. STEWART as Trustee for Deseret Healthcare Employee Benefit Trust, Plaintiff,**

v.

**R.J. STEARMAN, M.D., Defendant.**

**Civ. No. C–90–117W.**

United States District Court,
D. Utah, C.D.

Aug. 24, 1990.

Blake T. Ostler, Salt Lake City, Utah, for plaintiff.

James R. Brown, Harold L. Reiser, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the defendant's motion to dismiss. A hearing was held on June 11, 1990, at which the plaintiff was represented by Blake T. Ostler, and the defendant was represented by James R. Brown. The court had carefully read the relevant documents submitted by the parties before the hearing, and at the conclusion of the hearing, the court took the matter under advisement. Having considered the matter further, the court now renders the following memorandum decision and order.

This motion involves no disputed issues of material facts. Merwin U. Stewart is a trustee for the Deseret Healthcare Employee Benefit Trust ("Trust"). The Trust is a self-insured employee welfare benefits trust qualified under the Employee Retirement Income Security Act ("ERISA"). R.J. Stearman is a medical doctor practicing in the State of Utah.

On August 8, 1988, Stearman and the Trust, by Merwin U. Stewart, entered into a "Provider Agreement." Stearman agreed to provide medical services in return for compensation from the Trust. The Agreement became effective on January 1, 1988. An account was established under the Agreement against which Stearman could draw compensation for medical services provided. The Agreement provided that at the end of each year Stearman would reimburse the Trust for any unused funds that remained in the account.

The plaintiff alleges that at the end of 1988 the account contained unused funds in the amount of $908.92. On March 20, 1989, the trust contacted Stearman and requested reimbursement of this amount. After several requests for payment, the Trust filed a claim against Stearman in the Small Claims Division of the Salt Lake County Circuit Court, Salt Lake Department. This proceeding was dismissed by that court without prejudice. The Trust subsequently filed a claim against Stearman in the Third Circuit Court of the State of Utah. The Trust voluntarily dismissed this action believing that since the dispute involved claims under ERISA, the federal courts have exclusive jurisdiction over the matter. On February 5, 1990, this action was filed.

The defendant has moved to dismiss the plaintiff's action on several grounds.[1] First, the defendant argues that since this claim has been dismissed without prejudice on two earlier occasions, the claim is precluded under Federal Rule of Civil Procedure 41.[2] This argument is without merit. It is clear from the text of Rule 41 that the Rule is concerned with the circumstances under which a dismissal without prejudice in a federal court constitutes "adjudication upon the merits...." *Id.* The rule says nothing about the effect of two dismissals in state court.

Second, the defendant claims that neither the trust nor the trustee have the capacity to bring this action. The defendant points out that according to Federal Rule of Civil Procedure 17 the capacity of a party to bring a lawsuit is a matter of state law.[3] The defendant argues that a trust is not a legal entity with the capacity to sue under Utah law and that a trustee cannot sue unless it complies with Utah Code Ann. § 42–2–5 (Supp.1990).[4] Since the trustee in

---

1. The defendant argues for the first time in his reply memorandum that the plaintiff has failed to join an indispensable party, Deseret Mutual Insurance Company. The court will not consider this argument since to do so would effectively deprive the plaintiff of the opportunity to respond.

2. Rule 41 states in part:
   Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.
   Fed.R.Civ.P. 41(a)(1).

3. The Rule states in part that "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile." Fed.R.Civ.P. 17(b).

4. Section 42–2–5 states in part:

the present case has failed to comply with this provision, the defendant concludes that neither plaintiff has the capacity to sue and the action must be dismissed.

It is important to point out that the defendant's position depends upon whether or not ERISA applies to this case. If ERISA applies, the trust or the trustee, as a fiduciary, may bring this action under 29 U.S.C.A. § 1132 (West 1985). This is true despite the defendant's insistence that Federal Rule 17 requires the application of state law to the exclusion of § 1132. Inasmuch as this court is of the opinion that ERISA does apply to this case, the trustee is a proper party to bring this action. A contrary holding would result in the relevant provisions of § 1132 becoming inoperative in any state with contrary capacity rules. That would be untenable to the uniform application of ERISA throughout the United States which is what this court believes Congress intended.

■ The only remaining issue is whether federal subject matter jurisdiction exists in this case under ERISA. The defendant argues that the court is without subject matter jurisdiction[5] because the Provider Agreement does not constitute an "employ-

ee welfare benefit plan" under ERISA. There appears to be no dispute that the Deseret Healthcare Employee Benefit Trust was established pursuant to ERISA. The defendant also concedes that the plaintiff is a fiduciary of the Trust.[6] The defendant's sole basis for claiming the lack of jurisdiction is his contention that the Provider Agreement is a contract rather than part of an ERISA plan. The defendant insists that the plaintiff must attempt to enforce the Agreement as a contract in a state court.

The phrase "employee welfare benefit plan" is defined in ERISA to include any "plan, fund, or program" designed to provide "medical, surgical, or hospital care or benefits...." 29 U.S.C.A. § 1002(1) (West Supp.1990).[7] The plaintiff claims that this definition should be construed in such a way that the Provider Agreement will constitute part of the ERISA plan under the Trust. The plaintiff has cited only one case which addresses this precise issue involving facts similar to the present situation, and the court's research has revealed only one additional case. Both cases support a broad definition of an ERISA plan.

---

Every person who carries on, conducts, or transacts business in this state under an assumed name, whether that business is carried on, conducted, or transacted as an individual, association, partnership, corporation, or otherwise, shall file with the Division of Corporations and Commercial Code a certificate.... not later than 30 days after the time of commencing to carry on, conduct, or transact the business.

5. Section 1132(e)(1) of ERISA states:
Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.
29 U.S.C.A. § 1132(e)(1) (West 1985).

6. 29 U.S.C.A. § 1132(a) (West 1985) specifies the "[p]ersons empowered to bring a civil action" under ERISA:
A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin

any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

7. The entire text of § 1002(1) is as follows:
The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
*Id.*

The plaintiff cites *Blue Cross and Blue Shield v. Peacock's Apothecary, Inc.*, 567 F.Supp. 1258 (N.D.Ala.1983), in which an Alabama district court stated:

> Although plaintiff's agreements with the participating pharmacies, standing alone, are not employee benefit plans under ERISA, the participating pharmacy agreements clearly are part and parcel of ERISA "employee benefit plans."

*Id.* at 1267. In *Blue Cross*, agreements had been executed between "participating pharmacies" and insurance companies involved in an ERISA employee benefit plan.[8] The pharmacies agreed to distribute prescriptions to eligible plan participants for a small co-payment and the insurance companies agreed to reimburse the pharmacies on a cost-plus basis. The court rejected the defendants' argument "that the court does not have jurisdiction under ERISA because the participating pharmacy agreements between plaintiff and the pharmacies do not constitute 'employee benefit plans'...." *Id.*

Similarly, in *Silverman v. Barbizon School of Modeling & Fashion, Inc.*, 720 F.Supp. 966 (S.D.Fla.1989), the court stated:

> In the case *sub judice*, the Option Agreement entered into by the parties is integrally connected to the profit sharing plan and the pension plan, plans undeniably covered by ERISA.... The fact that the Option Agreement was a separate document from the plan documents makes no difference.

*Id.* at 972.[9] In *Silverman* the plaintiff employee and the defendant employer entered into an option agreement entitling the employee to purchase half the employer's business within a specified period of time. Funds for the purchase were provided by ERISA profit sharing and pension plans.

As in *Blue Cross*, the *Silverman* court rejected the idea that the option agreement, which was contained in a separate document, was not covered by ERISA.

The court believes that subject matter jurisdiction exists in this case for two reasons. First, as set out above, what little authority addresses this issue supports treating the Provider Agreement as part of the ERISA plan for purposes of subject matter jurisdiction. Second, the defendant has offered no persuasive reason that fine distinctions should be drawn between an ERISA "plan" and contracts which implement the plan. Of course, the federal courts are courts of limited jurisdiction. Unless Congress has—pursuant to the United States Constitution—conferred jurisdiction on the federal courts over some particular subject matter, disputes over the subject matter must be litigated in state courts. Through ERISA Congress has conferred subject matter jurisdiction on the federal courts over certain employee benefit plans. The language used in defining which plans are subject to ERISA suggests that Congress intended to cover more than whatever document the parties choose to entitle the "plan." The court holds that the Provider Agreement in the present case is "part and parcel," *Blue Cross*, 567 F.Supp. at 1267, of the ERISA plan under the Trust and that the court has subject matter jurisdiction necessary to resolve disputes involving the Agreement.

Accordingly, IT IS HEREBY ORDERED that the defendant's motion to dismiss is denied. Defendant is to respond to the plaintiff's complaint within fifteen days.

---

**8.** An "employee benefit plan" is defined in ERISA as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C.A. § 1002(3) (West Supp.1990).

**9.** The *Silverman* court further explained that the ERISA plans

were actually created for the purpose of funding the Option Agreement. The Option Agreement was dependent upon, and a benefit derived, from the Pension and Profit Sharing Plans. The use of the plans to fund the Option Agreement was an intended use, and therefore, the Option Agreement is entangled with the plans to such an extent that the Option Agreement itself is covered by ERISA. *Id.*