Jack SLYE, et al., Plaintiffs,

Schneider Tank Lines, Inc., et al., Intervening Plaintiffs,

v.

CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, et al., Defendants.

TEAMSTERS NAT'L FREIGHT INDUSTRY NEGOTIATING COMMITTEE, et al., Plaintiffs,

v.

SCHNEIDER TRANSPORT, INC., et al., Defendants.

Nos. C2–95–1245, C2–96–163.

United States District Court, S.D. Ohio, Eastern Division.

Feb. 14, 1997.

---

David A. Kadela, Schottenstein, Zox & Dunn, Columbus, OH, for Jack Slye, Richard Spofford, George L. Wagner, Eugene A. Calewarts, Edward W. DeGordon, Jr., James Fermanich, Douglas E. Kuchenbecker and Gregory A. Majers.

Thomas W. Hill, Emens, Kegler, Brown, Hill & Ritter, Columbus, OH, Donald Havermann, Morgan, Lewis & Bockius, Washington, DC, Thomas C. Nyhan, James P. Condon, James D. O'Connell, Central States Southeast and Southwest Areas Health and Welfare Fund, Des Plaines, IL, for Robert J. Baker, Arthur H. Bunte, Jr., Ray Cash, Jerry R. Cook, Howard McDougall, Joe Orrie, R.V. Pulliam, Sr., Jerry Younger and Central States Southeast and Southwest Areas

Health and Welfare Fund/Central States Southeast and Southwest Areas Pension Fund.

David J. Young, Roger D. Branigin, Michael R. Reed, Alan L. Briggs, Squire, Sanders & Dempsey, Columbus, OH, Thomas E. Vandenberg, Miles S. Mittelstadt, Schneider Tank Lines, Inc. and Schneider Transport, Inc., Green Bay, WI, Thomas M. Christina, Haynesworth, Baldwin, Johnson & Greaves, Greenville, SC, for Schneider Tank Lines and Schneider Transport.

Frederick Gerald Cloppert, Cloppert, Portman, Sauter, Latanick & Foley, Columbus, OH, Phillip R. Kete, International Brotherhood of Teamsters, Washington, DC, for Richard Kurowski, Richard Spofford, Teamsters Nat. Freight and Clement Wiley.

David J. Young, Squire, Sanders & Dempsey, Columbus, OH, for Schneider Nat. Bulk, Schneider Nat. Carrier, Schneider Nat., Inc., Schneider Tank Lines and Schneider Transport.

Thomas W. Hill, Emens, Kegler, Brown, Hill & Ritter, Columbus, OH, Donald Havermann, Harry Rissetto, Morgan, Lewis & Bockius, Washington, DC, for Central States Southeast and Southwest Areas Health and Welfare Fund/Central States Southeast and Southwest Areas Pension Fund.

### OPINION AND ORDER

KEMP, United States Magistrate Judge.

The history of these consolidated actions is set forth in great detail in prior opinions and orders of this Court. Generally, these two cases were filed after the Trustees of the Central States Health and Welfare and Pension funds, believing that Schneider Tank Lines and Schneider Transport violated the Funds' rule against adverse actuarial selection by refusing to reinvigorate their covered workforces by hiring employees without significant accumulated experience in the two Funds, or hiring anyone at all, voted not to accept additional collective bargaining agreements from those employers. This Opinion and Order addresses the question of whether the complaint filed in Case No. C–2–96–163 by the Teamsters National Freight Industry Negotiating Committee, one employee of

Tank, and two employees of Transport, should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The named defendants (Tank, Transport, Schneider National Carriers, Schneider National Bulk Carriers, and Schneider National, Inc.) have filed a motion to dismiss, which has been fully briefed. For the following reasons, the motion to dismiss will be granted without prejudice to the rights of the plaintiffs to seek relief pursuant to mechanisms provided in the applicable collective bargaining agreements.

### I.

Although the Court has made many factual determinations in its Opinion and Order of November 22, 1996, which was issued following a trial on the merits of certain claims raised in the complaint filed in C–2–95–1245, the Court is mindful that the instant motion to dismiss must be evaluated in the context of the complaint which was filed in the *Teamsters* case. Consequently, the Court will assume, for purposes of ruling on the motion, that the facts alleged in that complaint, and the facts conclusively demonstrated by exhibits attached to the complaint, are true. The Court is further mindful that a motion to dismiss filed under Rule 12(b)(6) can be granted only if it is beyond doubt that the plaintiff can prove no set of facts which would constitute a legally-cognizable claim for relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

### II.

In their complaint, the Teamsters and the individual employees seek damages and other relief from the five Schneider Companies based upon certain key allegations, and flowing from the fact that the Tank and Transport employees will not be able to attain additional levels of pension benefits from Central States if Central States' decision to terminate Tank's and Transport's participation in the Central States' funds is permitted to stand. The key allegations in the

complaint include an assertion that the defendants orally agreed, separate and apart from any collective bargaining agreements in existence, that Tank and Transport would continue their participation in the Central States' funds until all of the employees of those two companies who were hired prior to 1984 had retired. (Complaint, ¶ 18). The complaint further alleges that all five Schneider Companies are under common control, and that their separate corporate existence should be disregarded under an "alter ego" theory. The plaintiffs have alleged three causes of action growing out of the defendants' failure to insure that steps were taken to continue Tank's and Transport's participation: unlawful discrimination intended to deprive Tank's and Transport's employees of benefits under an ERISA plan, an alleged violation of § 510 of ERISA, 29 U.S.C. § 1140; a breach of the oral agreement to continue to participate until all of the pre–1984 hires had retired; and a breach of the participation agreements entered into by and among Tank, Transport, the Union, and Central States, through which Tank's and Transport's employees were entitled to participate in the Central States' funds.

The defendants claim that there is one additional key fact established by the complaint the documents attached thereto, namely that the Union has consistently recognized that Tank and Transport are separate bargaining units and therefore legal entities distinct from Bulk, Schneider National Carriers, and Schneider National. In fact, according to defendants, this concession allegedly made by the Union in the collective bargaining agreements undercuts the entire foundation for the complaint, because each of the three causes of action is premised upon an "alter ego" theory. In addition to that argument, however, defendants raise specific issues as to why each of the three causes of action described in the complaint are legally insufficient. The Court finds it unnecessary to reach the question of whether the "alter ego" theory is precluded by language in the collective bargaining agreements, because it concludes that defendants' other arguments are sufficient to support a dismissal of each of the three causes of action which have been pleaded.

### III.

◼ The Court begins with Count One of the complaint, which asserts a claim for unlawful discrimination under Section 510 of ERISA, 29 U.S.C. § 1140. Reduced to its essence, plaintiffs claim in this count that the defendants intentionally violated the rules and regulations of Central States that relate to adverse selection, and that the purpose of that violation was to cause the Tank and Transport drivers to be expelled from the funds, thereby terminating Tank's and Transport's obligation to make further contributions to the funds on behalf of those employees. The question presented is whether this type of conduct is the type of conduct which is prohibited by 29 U.S.C. § 1140. For the following reasons, the Court concludes that it is not.

The parties' arguments raise an issue of statutory interpretation. "The starting point in every case involving construction of the statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The relevant portion of the statute reads as follows:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act."

For the most part, the relevant statutory language is clear. It applies to persons who are participants or beneficiaries of plans such as the Central State Plans. It prohibits certain specific actions, including discharges, fines, suspensions, expulsions, or disciplines. Less clearly, it also makes it unlawful to "discriminate" against a participant or beneficiary "for the purpose of interfering with

the attainment of any right to which such participant may become entitled" under an ERISA plan. It is this last provision which the Court is called upon to interpret in this case, since the plaintiffs do not allege that they were discharged, fined, suspended, expelled, or disciplined by their employers or by the other Schneider entities. The question raised by the motion to dismiss is whether a cause of action can be maintained under § 1140 if the employer has taken no action to alter the employer-employee relationship except for the change in the employees' ability to attain benefits under an ERISA plan.

■ This issue has been debated in various courts of appeals across the country, but there do not appear to be any cases which have addressed the precise issue raised here, that is, whether an employer's breach of a participation agreement, which in turn leads to the termination of that employer's further participation in an ERISA plan, can be classified as a discriminatory action within the meaning of § 1140. This Court is persuaded, however, on the basis of persuasively-reasoned cases from various courts of appeals, that the statute does not reach that far, and that even under an expansive interpretation of the word "discriminate," perhaps appropriate here because the statute is a remedial one, § 1140 was not intended to address this type of conduct.

The Court begins its analysis with by reviewing the applicable Sixth Circuit case law. In *West v. Butler*, 621 F.2d 240 (6th Cir. 1980), the Court considered whether pension fund trustees could sue under ERISA to enjoin secondary picketing. The trustees argued that the secondary picketing, which was violent at times and discouraged covered employees from reporting to work, was designed to interfere with those employees' ability to obtain welfare and pension rights. After reviewing the pertinent legislative history of Section 510, the court concluded that "[t]he legislative history reveals that the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler*, 621 F.2d at 245. In language which is often cited in later cases, the Court

of Appeals concluded that § 510 was designed primarily "to protect the employment relationship that gives rise to an individual's pension rights." *Id.* Because the secondary picketing did not alter that relationship, the court held that it was not covered by § 510.

The Sixth Circuit has addressed the scope of § 510 in two later decisions, *Rush v. United Technologies*, 930 F.2d 453 (1991) and *Humphreys v. Bellaire Corp.*, 966 F.2d 1037 (1992). Neither of those cases is particularly helpful here, because, although the court reiterated its conclusions as to the purpose of § 510, both of those cases involved an employee who had been discharged, and any language suggesting how the statute applied to other situations was mere *dictum*. Nevertheless, there is no language in either case to suggest that the Sixth Circuit intended to retreat from its holding in *West* to the effect that the primary purpose of § 510 is to protect the employer-employee relationship.

Other circuits have addressed, on occasion, actions of employers which have unquestionably had an impact on the ability of an employee either to receive or to attain the right to receive some benefit under an ERISA plan. The overwhelming majority of those decisions have, consistent with *West v. Butler*, limited the reach of § 510 to discharges or other actions which have had an impact on the employer-employee relationship independent of the interference with the attainment of plan benefits. Perhaps the most persuasively-reasoned of these cases is *Deeming v. American Standard. Inc.*, 905 F.2d 1124 (7th Cir.1990).

The plaintiffs in *Deeming* lost their jobs as a result of a plant shutdown. They contended that an act covered by § 510 had occurred because the plant shutdown affected their ability to continue to obtain benefits under an ERISA plan. In rejecting that argument, the Seventh Circuit noted that " § 510 was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the obtainment of a pension right," and that it "was designed to protect the employment relationship which *gives rise* to an individual's pension rights." *Deeming*, 905 F.2d at 1127. The Court noted, consistent with *West v. Butler*, that § 510

clearly addressed specific employment actions, including all of those listed in the statute, as well as equivalent actions such as constructive discharge, but that it did not cover a situation where the only aspect of the employment relationship which changed was the ability to receive plan benefits. The court pointed out that, if such an argument were accepted, a serious question would be raised about the efficacy of other portions of ERISA: for example, if a total or partial elimination of a pension benefit is a § 510 violation even if unaccompanied by some change in the employment relationship, other provisions of ERISA which permit total or partial withdrawals or alterations of pension benefits would be void. *Id.* at 1127–28. The court noted that other sections of ERISA could be used, under appropriate circumstances, to challenge alterations to the plan which affect the receipt of benefits, but that § 510 was simply the wrong vehicle for those types of claims.

The Seventh Circuit has consistently adhered to this interpretation of § 510. In *McGath v. Auto–Body North Shore,* 7 F.3d 665 (7th Cir.1993), the Court was faced with a situation where an ERISA plan was amended twice; first, to postpone the date on which the plaintiff became eligible to participate in the plan, and, after he came close to meeting that postponed eligibility date, to exclude his participation altogether. Although *McGath* emphasized that § 510 is broad enough to cover both the listed types of employer actions and "atypical conduct" of the same sort, it held that such an action cannot be predicated solely upon a change in the pension plan, even if that change affects an employee's ability to obtain a plan benefit.

Much the same result was reached in *Teumer v. General Motors,* 34 F.3d 542 (7th Cir.1994), a case in which the plaintiff was laid off three months before his benefit was due to vest. Again, although the Court noted that actions taken by an employer to frustrate the vesting of benefits could, under appropriate circumstances, be actionable under § 510, those actions must involve some type of change in employment status. The claim advanced by the plaintiff in *Teumer* was not predicated upon his layoff, but in-

volved an assertion that his employer had improperly characterized a corporate action in order to deny that an event triggering the vesting of a benefit had occurred. The Court held that even if the effect of that characterization, and the employer's intent, was to deny the plaintiff the benefits he sought, because the employer's alleged improper characterization of the action did not alter the employer-employee relationship beyond the loss of the ability to obtain vested benefits, it could not form the basis for a § 510 action.

The Third Circuit has analyzed this issue similarly. In *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan,* 24 F.3d 1491 (3d Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995), the plaintiff complained that a benefit plan had been amended to eliminate her ability to obtain life insurance benefits, and, at the same time, those benefits were increased for other employees. She claimed that this action was the type of discrimination prohibited by § 510. Disagreeing, the Third Circuit, like the Sixth and Seventh Circuits, noted that § 510 was limited to actions that affected the employer-employee relationship in some way, and that the change in the ability to obtain a vested benefit, by itself, is not the type of action within the reach of the statute. That decision relied, in turn, upon *Gavalik v. Continental Can Co.,* 812 F.2d 834 (3rd Cir.), *cert. denied* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987), a case which, like *Deeming,* noted the circularity of the argument that the impact on the benefits themselves could be the adverse employment action necessary to trigger the application of § 510. The *Gavalik* court also observed that if a change in benefits was otherwise improper under ERISA, suit could be brought under some other section of the statute to address that impropriety.

The Tenth Circuit appears to agree with the Third, Sixth, and Seventh Circuits on this issue. In *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452 (1991), the court affirmed a grant of summary judgment on a § 510 claim brought by an employee who, after he retired, argued that the failure to allow him to elect to receive some of his vested pension

benefits in the form of stock of his employer was a § 510 violation. The Court stated, as a basis for affirmance, that the denial of the employee's request "has not affected [plaintiff's] employment situation." *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d at 1461.

Here, there is no allegation that any individual employee of either Tank or Transport has been affected in his or her employment relationship other than by the inability to continue to attain higher levels of benefits under the Central States' plans. Undoubtedly, that inability has had, or will have, a very substantial impact on those individual employees. However, it cannot form the basis for a § 510 claim. If it could, any action taken by any employer which affected in any way an employee's receipt of benefits under an ERISA plan could be used as the basis for a § 510 claim even if no other aspect of the employer-employee relationship changed. Based upon the plain language of the statute in question, the reliance by the Sixth Circuit on the legislative history of the statute to define Congress' intent, and the other case authority cited above, this Court concludes that § 510 does not reach the type of conduct described in Count One of the complaint, even if the intentional nature of that conduct and the impact upon the individual plaintiffs is assumed to be true. Count One of the complaint therefore fails to state a claim upon which relief can be granted.

## IV.

■ The next claim which the Court must analyze is set forth in Count Two of the complaint. That count alleges breach of the agreement described in paragraph 18 of the complaint. Paragraph 18 states that:

"Upon information and belief, separate and apart from the written collective bargaining agreements, Defendants entered into an enforceable agreement that Schneider Transport and Schneider Tank would continue to participate in the Pension and Welfare Funds for at least as long as it would take for all of their employees hired prior to 1984 (the 'pre–1984 Employees') to reach normal retirement age. Messrs. Wiley, Kurowski and Spoffard are all pre–1984 Employees."

Defendants have asserted a number of reasons why this claim should be dismissed, including that the parol evidence rule bars consideration of this alleged oral agreement, that it violates the statute of frauds, that it does not comply with § 502 of ERISA, which requires agreements to make contributions to pension and welfare funds to be in writing, that it has been superseded by subsequently-executed collective bargaining agreements, and that the plaintiffs have failed to exhaust remedies available to them under the collective bargaining agreements. The Court finds this latter argument to be the one which, logically, must be analyzed first, and concludes that it is a sufficient basis upon which to dismiss Count Two of the complaint.

Plaintiffs specifically allege in the complaint that the collective bargaining agreements between the Union plaintiffs and Tank and Transport are still in effect. That is clearly so with respect to Tank; the collective bargaining agreement attached as an exhibit to the complaint does not expire until 1999. Transport's collective bargaining agreement expired on June 30, 1996, but it contained a provision indicating that it continued from year to year unless specifically rejected by either party. Consequently, the record before the Court supports the conclusion that both of these collective bargaining agreements are still in effect.

Each collective bargaining agreement contains, in Article 8, a requirement that "[a]ny grievance, dispute or question of interpretation arising under this Agreement shall be decided 'case by case' on the basis of the merits of each case by means of the following grievance procedure unless otherwise specifically provided herein," and that the grievance procedure is a six-step procedure culminating in binding arbitration. Plaintiffs have not pleaded the exhaustion of this contractually-supplied grievance procedure, and argue, in opposition to the motion to dismiss, that no obligation exists to pursue a grievance with respect to Tank's and Transport's failure to continue to participate in the Central States' Pension and Health and Welfare Funds. Because a decision as to the arbitrability of this claim determines who, as between the Court and an arbitrator, may reach the merits of

the substantive defenses raised by defendants, the Court must first determine whether arbitration of this dispute is contractually required.

Plaintiffs' position on this issue is simple. The agreement described in ¶ 18 of the complaint to continue to participate in Central States, they allege, was made "separate and apart" from any individual collective bargaining agreement. This alleged oral agreement contains no arbitration clause. Therefore, plaintiffs are under no duty to submit their claim of breach of that agreement to an arbitrator in accordance with the grievance procedure set forth in the collective bargaining agreements.

This argument, although alluring in its simplicity, is, in the Court's view, inconsistent with the fundamental principles underlying the collective bargaining relationship between a labor union and an employer. Those controlling principles, which heavily favor arbitration of labor disputes, cannot be so conveniently circumvented. Consequently, even assuming that the allegations of paragraph 18 of the complaint are true, the Court concludes that the validity of the alleged oral agreement is subject to the mandatory arbitration provisions of the collective bargaining agreements.

The Court begins from the vantage point of national labor policy, as expressed in the famous *Steelworkers* trilogy. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) noted the policy set forth in the Labor Management Relationship Act favoring the settlement of labor disputes through the method agreed upon by the parties, which is typically arbitration. In holding that national labor policy, which goes beyond the dictates of ordinary contract law, favors such arbitration, the Supreme Court stated that "[a]rbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the [collective bargaining] agreement." *Id.* at 567, 80 S.Ct. at 1346. In *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court reiterated the national labor policy favoring arbitration as a

way to avoid industrial strife, and held that "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement" and that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*" *Id.* at 582, 80 S.Ct. at 1353 (emphasis supplied). *See also McGinnis v. E.F. Hutton & Co.*, 812 F.2d 1011, 1013 (6th Cir.), *cert. denied* 484 U.S. 824, 108 S.Ct. 87, 98 L.Ed.2d 49 (1987).

This strong policy in favor of the arbitration of labor disputes has an impact on the way in which courts have viewed agreements which are allegedly entered into separate and apart from the formal collective bargaining agreement. For example, any claim made under state law which, in order to be resolved, requires some interpretation of a collective bargaining agreement, is completely preempted by that agreement. *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Likewise, individual agreements which purport to deal with subjects also covered by the collective bargaining agreement are void. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir.1990). The Court recognizes that the plaintiffs' claim is not that this separate agreement is enforceable under state law, which was the issue addressed in *Allis–Chalmers* and *Fox*, but that it is enforceable under § 301 as having been reached between the Union, as collective bargaining agent for the individual employees, and the two Schneider companies. This, however, does not mean that the arbitration provisions of the collective bargaining agreement are not broad enough to encompass this agreement.

"It has long been settled that the explicit terms of a collective bargaining agreement do not necessarily establish its boundaries." *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 363 (5th Cir. 1984). Rather, any such separate agreement that speaks to an issue that is within the

scope of the collective bargaining agreement, broadly interpreted, is "part and parcel of the collective bargaining agreement and subject to its terms, including the grievance procedure." *Id.* Thus, "a dispute with regard to company practices, policies, or customs that are not explicitly covered by the collective bargaining agreement is properly within the scope of the contractual grievance procedure" if the practice, policy, or custom relates to a subject covered by that agreement. *Id.*

The Court believes that to be the case here. There is no dispute that each collective bargaining agreement entered into by Tank and Transport since at least 1984, which appears to be when the alleged separate agreement was made, directly addresses each company's obligation to make contributions to the Health and Welfare and Pension Funds on behalf of covered employees. The Funds are identified in the agreements, the contribution rates are established, and the employees on whose behalf contributions are to be made are described either by name or by job category. Eligibility requirements are set forth, and participation levels are also addressed. Thus, the making of contributions to the Central States Funds is clearly a subject matter within the scope of the collective bargaining agreements. Consistent with the above case law, the contractual obligation assumed by the Union and the employees to arbitrate disputes arising under these collective bargaining agreements is broad enough to encompass the alleged breach of this separate agreement.

Plaintiffs may argue that, although the collective bargaining agreements address the particulars of contributions to the Funds, they do not address the larger issue of how long Tank and Transport are obligated to continue to enter into collective bargaining agreements which contain such provisions. Such an argument is unavailing. It is difficult, if not impossible, to separate the question of whether Tank or Transport have violated the specific contribution obligations contained in the existing collective bargaining agreements from the question of whether they have breached a separate agreement to continue to make those contributions until

certain employees reach retirement age. An act which can form the basis both for a claim that the collective bargaining agreement has been breached and that some separately-negotiated agreement has also been breached is clearly a matter of dispute between the parties which involves an interpretation of the collective bargaining agreement, and it is therefore encompassed within its subject matter, even if it is a slightly different aspect of the same issue. Simply put, the Court does not believe that plaintiffs can avoid their obligation to arbitrate issues relating to Tank's and Transport's duty to make contributions under the collective bargaining agreements by asserting that such a duty has also arisen under some separate agreement which contains no arbitration clause. The subject matter of the two agreements is the same, national labor policy requires a broad interpretation of the collective bargaining agreement, and it favors arbitration. Thus, the Court concludes that these claims are arbitrable, and that because plaintiffs have not exhausted the remedies under the collective bargaining agreements, they cannot maintain Count Two in this Court.

As noted, defendants also contend that the alleged side agreement is invalid because the parol evidence rule, as a matter of substantive law, precludes its enforcement; because it is not in writing and therefore is unenforceable either under the statute of frauds or under ERISA; that it has been superseded by subsequently-executed collective bargaining agreements; and that it directly contradicts the terms of the collective bargaining agreements because those agreements specify the duration (i.e. the life of the agreement and any extensions) of Tank's and Transport's obligation to make such contributions. In keeping with the Supreme Court's admonition in the *Steelworkers* trilogy, the Court expresses no view either as to the merits of the claim asserted in Count Two or the various defenses raised thereto. That matter is properly for the arbitrator to determine if the parties choose to pursue their remedies under the collective bargaining agreement.

## V.

Finally, the Court must determine whether Count Three of the complaint is

subject to dismissal for failure to state a claim. Count Three, in syllogistic fashion, asserts the following: first, that the participation agreements (those agreements which, when accepted by Central States, serve as the vehicle through which Tank and Transport make the contributions required under the collective bargaining agreements to the two Central States Funds) expressly state that Tank and Transport are bound to follow all the rules established by the trust agreement and by Central States; second, that Tank and Transport breached the Funds' rule against adverse selection; and, third, that this violation is therefore a breach of the participation agreements which entitles plaintiffs to relief. Although the precise source of that relief is not clearly spelled out in the complaint, plaintiffs, through arguments subsequently presented in their response to the motion to dismiss and their further reply, contend that Count Three states a claim under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Defendants, in somewhat cursory fashion, point out that the same problems with exhaustion of the grievance procedure in the collective bargaining agreement applies to any claim of breach of the participation agreements, and also contend that no relief is available under 29 U.S.C. § 1132(a)(3) because the participation agreements are not employee benefit plans. Defendants also contend that, because they are not ERISA fiduciaries, they are not persons subject to suit under that statutory subsection. The Court need not reach this latter argument, because it agrees that, to the extent this claim is predicated exclusively on 29 U.S.C. § 1132(a)(3), it does not fall within the purview of that statute.

Again, because the primary issue raised by the motion to dismiss involves a question of statutory interpretation, it is helpful to recite in some detail the applicable statutory provisions. First, 29 U.S.C. § 1132(a) reads, in pertinent part, as follows:

"A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii)to enforce any provisions of this subchapter or the terms of the plan;"

Obviously, there are several elements which must be pleaded in order to state a claim under § 1132(a)(3), including the plaintiff's status as a participant, beneficiary, or fiduciary, and the identification of an act of practice which violates either some other provision of ERISA or the terms of "the plan." The individual plaintiffs are certainly participants and beneficiaries in the Central States' plans (or at least they were, and they continue to assert an entitlement to be participants and beneficiaries), so the operable question, distilled to its essence, is whether it can fairly be said that the participation agreements are part of "the plan" so that their breach is the equivalent of a breach of the terms of an ERISA plan.

ERISA defines employee benefit plans in 29 U.S.C. § 1002. Employee welfare benefit plans are defined in § 1002(1) to be plans established or maintained by an employer or employee organization, or both, for the purposes of providing to participants or beneficiaries certain health care benefits, benefits in the event of other occurrences such as accidents, disability, death, or unemployment, or vacation benefits, training or apprenticeship programs, prepaid legal services, or similar types of benefits. 29 U.S.C § 1002(2)(A) defines an employee pension benefit plan to be a plan similar to a welfare benefit plan, except that the purpose of the plan is to provide retirement income or deferred income to employees. Finally, 29 U.S.C. § 1002(3) defines "plan" to mean either an employee welfare benefit plan or an employee pension benefit plan or a plan which is both.

The statutory definition is clear and detailed, and needs little elucidation. Obviously, it consists of a number of elements, which include the existence of a plan, fund, or program; the establishment or maintenance of such a plan, fund, or program by an employer or employee organization; and an intent to provide specific benefits to participants or beneficiaries. *See Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (*en banc*). To the extent that any of these

concepts are not self-explanatory, the *Donovan* court explained that "[a]t a minimum ... a 'plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Id.* at 1372. That definition is well-accepted in this and other circuits. *See International Resources v. New York Life Ins. Co.,* 950 F.2d 294, 297 (6th Cir.1991), *cert. denied,* 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992); *see also Madonia v. Blue Cross & Blue Shield of Virginia,* 11 F.3d 444, 446–47 (4th Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); *Wickman v. Northwestern National Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990).

There is no dispute that the Trust Agreements establishing both the Central States' Health and Welfare Plan and the Central States Pension Plan are "plans" within the meaning of ERISA. Just as clearly, however, the participation agreements, standing alone, are not. The Court notes, parenthetically, that copies of relevant participation agreements were not attached to the plaintiffs' complaint in this case, but copies of those documents can be found elsewhere in the record, including as Exhibits 1 and 2 to the intervenor plaintiffs' complaint filed in Case No. C–2–95–1245 (file document # 42 in that case). There is nothing in the participation agreements which speaks to either the provision of specific benefits to participants or which addresses a procedure for applying for and collecting such benefits. Additionally, plaintiffs have not alleged that the participation agreements themselves fall within the statutory definition of a "plan." Consequently, Count Three is viable under plaintiffs' theory only if it is conceivable that plaintiffs could prove that the participation agreements are "part and parcel" of the Trust Agreements.

There are few decisions that consider when an agreement which is not itself an ERISA can nevertheless be considered to be "part and parcel" of a plan and therefore form the basis for an action under § 1132(a)(3). Three District Court cases, *Stewart v. Stear-*

*man,* 743 F.Supp. 793 (D.Utah 1990), *Silverman v. Barbizon School of Modeling & Fashion,* 720 F.Supp. 966 (S.D.Fla.1989), and *Blue Cross & Blue Shield of Alabama v. Peacock's Apothecary,* 567 F.Supp. 1258 (N.D.Ala.1983) address this issue. Two of those three cases involved provider agreements through which either a physician or a pharmacy agreed, in exchange for payments from the ERISA plan, to provide prescription drugs or medical care to plan beneficiaries. The third, *Silverman,* involved a stock auction purchase agreement which was funded by an ERISA plan. In each case, the district court concluded that the separate agreements were "part and parcel" of the ERISA plans, and that suit could be brought under § 1132(a)(3) for a breach of those agreements.

Each of these three cases expresses the view that the ERISA definition of a plan should be read broadly to include not simply the trust agreement or other instrument which the parties have designated as the "plan," but also other agreements which are created as a means to provide the benefits described in the plan. However, their holdings are limited to agreements falling into that latter category, i.e., agreements through which the plan benefits are actually *distributed* to the plan beneficiaries. None of them address the type of agreement which, like the participation agreements entered into in this case, constitutes part of the mechanism through which an ERISA plan is *funded.* This Court is called upon to resolve this apparently novel issue.

ERISA itself provides little assistance in deciding this issue, since the phrase "participation agreement" is not defined in the statute, and there is no statutory language that is particularly helpful in deciding whether a participation agreement can be swept under the umbrella of the ERISA plan itself. 29 U.S.C. § 1145, which creates a statutory obligation to make contributions to multi-employer plans if an employer has otherwise assumed such an obligation, identifies the acceptable source of the employer's obligation as either "the terms of a collectively-bargained agreement" or "the terms of the plan. . . ." The participation agreement is a

bridge between these two instruments, but it is not specifically referenced either in § 1145 or elsewhere in ERISA. It becomes the Court's task to determine with which of the two—the collective bargaining agreement or the plan—it is properly associated. The reason this inquiry is so crucial is if the participation agreement is deemed to be "part and parcel" of the collective bargaining agreement rather than "part and parcel" of the ERISA plan, any claim for breach of the participation agreements becomes subject to the need to exhaust the grievance procedures provided for in the collective bargaining agreements. *See* Section IV, *infra.*

Here, the language of the participation agreements is key. The Court acknowledges that this matter is before it by way of a motion to dismiss, and that despite having sued for breach of the participation agreements, plaintiffs have not made them exhibits to their pleadings. However, the participation agreements appear elsewhere in the record of these consolidated cases, and the Court believes that it is only fair to judge the viability of the plaintiffs' claim for breach of a written instrument by referring to the instrument itself.

Both Tank and Transport entered into a series of participation agreements. Although the agreements differ somewhat depending on the date on which they were signed, they are all similar in format and in the relevant language used to describe the bases on which the agreements to participate are predicated. First, they specifically recite that the employer and the Union have entered into a collective bargaining agreement that requires participation in the Central States' Funds. Second, they incorporate the precise contribution rates agreed to in the collective bargaining agreements. Third, they recite that the obligation to make those payments under the participation agreement is co-extensive with the obligation assumed in the collective bargaining agreements. For example, Transport's 1971 participation agreement provides that "when and if such contributions are no longer required by a collective bargaining agreement between the parties," the obligation to make payments under the participation agreement ceases. Similar language is contained in Tank's participation agreements.

The Court recognizes that there are competing policies at work here. On the one hand, it may be entirely appropriate to read the definition of an ERISA plan expansively to sweep peripheral agreements into the scope of the § 1132, recognizing that Congress intended ERISA to have broad preemptive scope and that the statute was designed to provide a remedy to those persons who participate in and benefit from the operation of ERISA plans. On the other hand, there is a strong national labor policy promoting arbitration as a means to deal with industrial strife, and that policy requires giving collective bargaining agreements broad preemptive scope in order to include, as part of the collectively-bargained obligation to arbitrate, all matters which are inextricably intertwined with the interpretation of the collective bargaining agreement. These policies meet head-on in the participation agreement precisely because it is intended to bridge the gap which exists between the employer's collectively-bargained obligation to make contributions to specific funds and the funds' agreement to accept those contributions as being consistent with the terms of the trust agreement.

Although resolution of this issue is not free from doubt, the Court firmly believes that the participation agreements are viewed more logically as extensions of obligations assumed in the collective bargaining agreements than they are as extensions of the ERISA plan. There are two discrete stages to an employer's participation in an ERISA plan: assuming an obligation to participate, and then fulfilling those duties after participation is assented to by the plan fiduciaries. The collective bargaining agreement is the way in which the agreement to participate is created, while the plan deals with post-agreement matters such as defining the benefits which will be made available to employees, setting eligibility criteria, and distributing benefits. The participation agreement implements the election to participate in an ERISA plan which is created by the collective bargaining agreement, while agreements such as those analyzed by the three district

court cases cited above implement the ERISA plan's intended purpose of providing benefits. This suggests that the participation agreements belong on the collective bargaining agreement side, rather than the plan side, of the dividing line.

Further, the participation agreements are valid only for the life of the collective bargaining agreements. Because they incorporate the same obligations to contribute at certain rates for certain employees for certain specified periods of time as do the collective bargaining agreements, it is impossible to interpret those provisions of the participation agreement without also interpreting the collective bargaining agreement. Weighing all these factors, the Court is persuaded that the participation agreements are an outgrowth of the collective bargaining agreement and are so inextricably intertwined with obligations assumed thereunder that it would seriously impact national labor policy to permit an action for breach of these participation agreements to proceed under § 1132(a)(3) without first requiring resort to the contractually-agreed upon dispute resolution mechanism, i.e. the grievance procedure set forth in the collective bargaining agreement. The Court therefore concludes that participation agreements are not "plans" as that term is used in § 1132(a)(3), and that Count Three, which is based exclusively upon that statute, fails to state a claim upon which relief can be granted.

It is important to note that the Court, consistent with plaintiffs' position taken in its memoranda, has not interpreted Count Three to be an attempt to plead a cause of action for breach of the participation agreements independent of the claim under ERISA. If plaintiffs had pleaded such a claim, the Court's analysis would require dismissal of that contractual claim for failure to exhaust the remedies set for in the collective bargaining agreements. Consequently, nothing in this Opinion and Order should be construed either as a ruling on the merits of any breach of contract claim or as a bar to the parties' submission of such a claim to an arbitrator for resolution.

## VI.

Based on the foregoing analysis, Counts One and Three of the complaint filed in Case No. C-2-96-163, asserting claims under 29 U.S.C. §§ 1140 and 1132(a)(3), are DISMISSED WITH PREJUDICE pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Count Two of the complaint is DISMISSED WITHOUT PREJUDICE for failure to exhaust remedies provided for in the collective bargaining agreements. Having so held, the Court dismisses Case No. C-2-96-163 in its entirety. Consistent with *Beil v. Lakewood Engineering & Manufacturing Co.*, 15 F.3d 546 (6th Cir.1994), the Clerk is directed to enter a judgment against the plaintiffs and in favor of the defendants in that case. The parties are advised that this is a final, appealable order notwithstanding the prior consolidation of these two actions.